IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TERESA A. ANSELL,

                Plaintiff,

v.                                     CIVIL ACTION NO.   2:24-cv-00640

ALEDADE, INC.,

                Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Aledade, Inc.'s Motion for Summary Judgment, [ECF No. 38]. Plaintiff Teresa A. Ansell filed a response in opposition, [ECF No. 40], to which Defendant replied, [ECF No. 41]. The matter is ripe for review. For the reasons set forth below, Defendant's motion, [ECF No. 38], is **GRANTED**.

I.      **BACKGROUND**

In April 2022, Defendant hired Plaintiff as an Implementation Specialist. [Ansell Dep. at 58–59].[1] Plaintiff was 66 years-old at the time she began her employment, and she worked remotely from her home in Charleston, West Virginia. *Id.* at 63, 71. In October 2023, however, Defendant terminated Plaintiff's employment due to a company-wide cost reduction measure. [Velandingham Dep. at 48–49, 53].

---

[1] Both Defendant's motion and Plaintiff's response include selected excerpts from depositions taken in this case. Because the parties submitted different portions of each transcript, I cite deposition testimony by identifying the deponent and the corresponding transcript page numbers.

As a company, Defendant contracts with physician practices across the U.S. to help them enhance their electronic record-keeping practices on various platforms. In essence, Defendant "partners with the independent physician groups—primarily primary care— and [] work[s] with them to transform their practice to succeed in value-based care arrangements . . . ." *Id.* at 18–19. When Defendant contracts with physician practices, it assigns those contracts to its Implementation Specialists. [Ansell Dep. 65]. Implementation Specialists then work "with the doctors' offices to [] optimize their . . . system[s] and train them on how to accurately input patient data, . . . [and] code accurately." *Id.* at 66. They also "build templates for them to help them do that." *Id.*

According to Rick Velandingham, Defendant's Vice President of Practice Success, company leadership decided to undergo a cost reduction effort because projected revenues were lower than expected. [Velandingham Dep. at 47–49]. Discussions about these changes occurred in meetings and through oral communications, resulting in little written documentation of leadership's decisions. *Id.* at 47–49, 55, 61. Shortly after leadership decided to cut costs, Mr. Velandingham was informed that he needed to eliminate five positions to achieve Defendant's objective. *Id.* at 52–54. Mr. Velandingham started by eliminating three vacant positions, which left two filled positions subject to reduction. *Id.* at 57–58.

To identify the remaining two positions, Mr. Velandingham initially considered the entire organization, which consists of three regions. *Id.* at 52, 56–57. He subsequently homed in on the Northeast region because he determined it was overstaffed due to limited business growth in that region. *Id.* at 56–57, 62. Within the Northeast region, the Implementation Team became the focus because slower growth resulted in less work than originally anticipated for that specific team. *Id.* at 61–62. From there, Mr. Velandingham evaluated which positions within the Implementation

Team were overstaffed and, among those positions, which employees had skills that were more strategically aligned with Defendant's business needs. *Id.* at 56–57, 59, 65. That is how Mr. Velandingham arrived at considering Plaintiff's position for elimination.

Part of Mr. Velandingham's assessment of Plaintiff involved speaking to her supervisor, Tracy Burns. [Velandingham Dep. at 66, 86]. Ms. Burns became Plaintiff's supervisor about a month before Plaintiff's termination. *Id.* at 73–74. However, Ms. Burns had assigned Plaintiff cases and assisted her with projects as early as Plaintiff's hiring. [Burns Dep. at 49, 71]. Plaintiff also testified that she "worked with Tracy the whole time" and considered Ms. Burns a "mentor" and "go-to-person." [Ansell Dep. at 70, 101].

Although Plaintiff's prior supervisor, Angie Flynn, had supervised Plaintiff for the majority of her employment, Mr. Velandingham stated he did not contact her because she was on sabbatical at the time. [Velandingham Dep. at 74, 113]. He further explained that he had previously received feedback from Ms. Flynn regarding Plaintiff, and he trusted Ms. Burns "as a proxy to Angie Flynn" given Ms. Burns's engagement in Plaintiff's workflow since Plaintiff's hire. *Id.* at 113, 131.

Mr. Velandingham and Ms. Burns had one phone call about Plaintiff before Mr. Velandingham's decision. *Id.* at 66; [Burns Dep. at 39, 41]. Mr. Velandingham contacted Ms. Burns to discuss whether any of her supervisees were having performance challenges. [Velandingham Dep. at 80]. Ms. Burns identified two individuals: Plaintiff and Brittany Grothouse, another Implementation Specialist who was 37 years old. *Id.*; [Burns Dep. at 46–48].

Ms. Burns told Mr. Velandingham that she did not have a lot of confidence in Plaintiff's ability to handle complex cases and that Plaintiff still needed assistance and guidance to manage some of her projects. [Velandingham Dep. at 67, 81; Burns Dep. at 36–37, 40]. Regarding Ms.

Grothouse, Ms. Burns stated that her performance deficiencies stemmed from personal issues Ms. Grothouse was experiencing at the time. [Burns Dep. at 47–48]. Still, Ms. Burns testified that she could assign Ms. Grothouse complex cases, *id.* at 68, and Mr. Velandingham stated that he ultimately retained Ms. Grothouse because she was a subject-matter expert in areas that were beneficial to Defendant and aligned with Defendant's needs, [Velandingham Dep. at 82–83]. Conversely, Mr. Velandingham considered Plaintiff to be more of a "generalist" and concluded that, relative to Ms. Grothouse, Plaintiff's skills were less aligned with the business's needs. *Id.* at 65, 68, 82–83.

Mr. Velandingham testified that he also looked at employees' overall performance scores to assess whether there were any obvious outliers in terms of performance. *Id.* at 86. Defendant's performance review process involves a narrative section with a final rating at the end where an employee is given one of five ratings (from highest to lowest): (1) Outstanding, (2) Exceeds, (3) Solid, (4) Developing, or (5) Below/Performance Concern. [ECF No. 40-6 at 6]. According to Mr. Velandingham, he only reviewed employees' final ratings and not the explanatory sections. [Velandingham Dep. at 110–12]. He testified that this was because "the performance review doesn't highlight [employees] strategic alignment to what the business needs most," and "I would be eliminating a role of a solid employee regardless." *Id.* at 110–11. He acknowledged that both Plaintiff and Ms. Grothouse received a "solid" performance rating. *Id.* at 111–12. Nevertheless, he concluded that Plaintiff was less aligned with business needs because other employees were subject-matter experts or could independently manage complex projects, whereas Plaintiff continued to require assistance. *Id.* at 77, 81, 86–87, 94–96.

In sum, Mr. Velandingham's decision to discharge Plaintiff was based on his phone call with Ms. Burns, his own knowledge of Plaintiff's work product and performance since joining the

company, and consideration of final performance ratings. *Id.* at 86–87, 110–12. Mr. Velandingham ultimately decided to eliminate Plaintiff's position along with that of Noreen Nisa, a 26-year-old Implementation Analyst whose position was consolidated into one nationwide position. *Id.* at 98. Within a few weeks of his termination decision, Mr. Velandingham authored a document that included the reasoning for his decision along with how he anticipated Plaintiff's and Ms. Nisa's work would be allocated. *Id.* at 135. For Plaintiff specifically, his rationale included: (1) "[l]ower than anticipated growth requiring reduced launch capacity," (2) "[i]ncreased need for depth of EHR [electronic health record] expertise vs Teresa's generalist skills (Teresa is not a SME [subject-matter expert] for any of our top EHRs and has not demonstrated an ability to quickly learn new systems)," (3) "[r]equires higher degree of direction and coaching than peers onboarding at/since her hiring," and (4) "[c]urrently only able to assign simple projects; unable to navigate more complex projects without support." [ECF No. 38-4].

On October 10, 2023, Defendant notified Plaintiff via email of the decision to eliminate her position after a review of the company's resources and organizational structure. [Ansell Dep. at 106, 109]. Plaintiff subsequently attended a separation meeting with a member of human resources and received a severance and release agreement. *Id.* at 115, 118–19.  As part of the separation materials, Plaintiff received a legal disclosure, which set forth the position titles and ages of everyone in the "decisional unit" who had been considered for termination, along with the titles and ages of those who were terminated. *Id.* at 126, 128; [ECF No. 40-4]. The disclosure showed Plaintiff's and Ms. Nisa's positions, along with their ages, as the two eliminations. [Ansell Dep. at 128–29].

Mr. Velandingham testified that he did not assist in creating the disclosure and had not seen it until preparation for his deposition. [Velandingham Dep. at 69]. He further stated that age

played no role in his reduction decision. *Id.* at 134. Plaintiff testified that she had no reason to doubt the explanation provided in her termination email for the company's reduction measure. [Ansell Dep. at 110].

Plaintiff additionally testified that no manager had ever made age-related comments to her. *Id.* at 137. She alluded to one instance in which a co-worker made a vague reference to her age by stating "someone your age" on a call. *Id.* at 138.   However, Plaintiff could not recall the context of the conversation or the name of the person who made the comment. *Id.* The statement was memorable to her because she felt "like a lightning bolt went through" her. *Id.* Otherwise, Plaintiff's testimony primarily referred to instances where she struggled to form connections with colleagues and the fact that she was the oldest employee considered for termination, as well as the oldest one ultimately let go. *Id.* at 134–35, 139. Since Plaintiff's termination, no one has replaced her, nor has any region hired an Implementation Specialist. [Velandingham Dep. at 120–21].

Plaintiff filed her complaint on November 12, 2024, alleging age discrimination in violation of the West Virginia Human Rights Act ("WVHRA"), W. Va. Code § 16B-17-1 *et seq*. [ECF No. 1]. On August 19, 2025, Defendant moved for summary judgment, arguing that it is entitled to judgment as a matter of law because Plaintiff failed to establish a prima facie case of age discrimination or, alternatively, failed to rebut Defendant's legitimate, nondiscriminatory reason for her termination. [ECF Nos. 38, 39].

## II.    LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case." *Lester v. Gilbert*, 85 F. Supp. 3d 851, 857 (S.D. W. Va. 2015) (quoting *News & Observer Publ'g Co. v.*

*Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)). "A genuine issue of material fact exists if . . . a reasonable fact-finder could return a verdict for the non-movant." *Runyon v. Hannah*, No. 2:12-1394, 2013 WL 2151235, at *2 (S.D. W. Va. May 16, 2013) (citations omitted); *see Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) ("Disposition by summary judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non-movant."). The moving party bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp.*, 477 U.S. at 322–23. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of summary judgment. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

## III.  DISCUSSION

The WVHRA prohibits employers from discriminating against employees on the basis of certain protected characteristics, including age. W. Va. Code § 16B-17-2. Cases brought under the WVHRA "are governed by the same analytical framework and structures developed under [Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII")], at least where our statute's language does not direct otherwise." *Barefoot v. Sundale Nursing Home*, 193 W. Va. 475, 482, 457 S.E.2d 152, 159 (1995).   In the absence of direct evidence of discrimination, courts analyze claims under the WVHRA as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Shepherdstown Volunteer Fire Dep't v. State ex rel. W. Va. Hum. Rts. Comm'n*, 172 W. Va. 627, 637, 309 S.E.2d 342, 352 (1983) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)).  Although Plaintiff has established a prima facie case, I conclude summary judgment should be granted in favor of Defendant because Plaintiff has not rebutted Defendant's legitimate, nondiscriminatory reason for discharging Plaintiff.

## A.    Plaintiff Has Established a Prima Facie Case

To establish a prima facie case of employment discrimination under the WVHRA, a plaintiff must show that (1) she is a member of a protected class; (2) the employer made an adverse decision concerning her; and (3) but for the plaintiff's protected status, the adverse decision would not have been made.[2] Syl. Pt. 3, *Conaway v. E. Assoc. Coal Corp.*, 178 W. Va. 164, 166, 358

---

[2] Notably, there is a different federal prima facie test for reduction-in-force ("RIF") cases that West Virginia has not explicitly adopted. For a federal RIF case under the ADEA [Age Discrimination in Employment Act], an employee must demonstrate: "(1) he was protected by the ADEA; (2) he was selected for discharge from a larger group of candidates; (3) he was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual work force including some persons in the group who were substantially younger than him and who were performing at a level lower than that at which he was performing." *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 430 (4th Cir. 2000).

The Supreme Court of Appeals of West Virginia has recognized that though federal appellate courts apply a different RIF prima facie test, "it is clear that our formulation in *Conaway* was not intended to create a more narrow standard of analysis . . . than is undertaken in the federal courts." *Kanawha Valley Reg'l. Transp. Auth. v. West Virginia*, 181 W. Va. 675, 678, 383 S.E.2d 857, 860 (1989). Nonetheless, West Virginia has not explicitly adopted a

S.E.2d 423, 425 (1986). Courts have recognized that the showing a plaintiff must make to state a prima facie case is "de minimis." *See Thompson v. CSX Transp., Inc.*, 582 F. Supp. 3d 355, 363–64 (S.D. W. Va. 2022) (Chambers, J.) (quoting *Nestor v. Bruce Hardwood Floors, L.P.*, 210 W. Va. 692, 695, 558 S.E.2d 691, 694 (2001)).

The first two elements of Plaintiff's prima facie case are readily satisfied. Plaintiff was 67 years old at the time of her termination and therefore a member of a protected class based on age. W. Va. Code § 16B-17-3(k) ("The term 'age' means the age of 40 or above."). Moreover, termination is a quintessential example of an adverse employment decision. *Thompson*, 582 F. Supp. 3d at 364 ("[A]n adverse employment [decision] is an act that adversely affects the 'terms, conditions, or benefits' of one's employment." (quoting *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 650–51 (4th Cir. 2002))). The parties dispute, however, the third element—whether the adverse decision would not have occurred but for Plaintiff's age.

The "but for" test "is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination." *Barefoot*, 193 W. Va. at 484, 457 S.E.2d at 161. The Supreme Court of Appeals of West Virginia has held:

> Because discrimination is essentially an element of the mind, there will probably be very little direct proof available. Direct proof, however, is not required. What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion.

*Conaway*, 178 W. Va. at 170–71, 358 S.E.2d at 430–31. One way a plaintiff may make this showing is by providing evidence of disparate treatment relative to a similarly situated employee. *Id.*; *Thompson*, 582 F. Supp. 3d at 368. Specifically, a plaintiff may demonstrate that she was

---

different prima facie test for RIF cases.

"replaced by a 'substantially younger' employee" or that "a 'substantially younger' employee, who engaged in the same or similar conduct for which the plaintiff faced an adverse employment decision, received more favorable treatment." *Knotts v. Grafton City Hosp.*, 237 W. Va. 169, 179, 786 S.E.2d 188, 198 (2016).[3] An employee is generally considered "substantially younger" when they are at least ten or more years younger than the plaintiff. *Id.* at 179–80, 786 S.E.2d at 198–99.

Plaintiff has demonstrated an inference of discrimination because a similarly situated, substantially younger employee engaged in the same or similar conduct, for which Plaintiff faced termination, and received more favorable treatment. At the time of discharge deliberations, Ms. Burns supervised four employees: Plaintiff, Sarah Stuart, Abby Schlick, and Brittany Grothouse. [Burns Dep. at 19]. When asked whether any of her supervisees had performance issues, Ms. Burns identified both Plaintiff and Ms. Grothouse, who was 37 years old. Yet, Defendant retained Ms. Grothouse while Plaintiff was terminated. This is not merely a case in which a substantially younger employee was retained.[4] Rather, the same supervisor identified both Plaintiff and a substantially younger employee as supervisees with performance issues, and they received different treatment.[5] That disparity is sufficient to satisfy the third element of Plaintiff's prima facie case.

---

[3] In recognition of *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996), West Virginia disposed of the "over 40/under 40" rule, which focused the inquiry on how a plaintiff was treated relative to only those outside of the protected class (under 40) rather than those "substantially younger." *Knotts*, 237 W. Va. at 178, 786 S.E.2d at 197. The "substantially younger" rule avoids "the type of absurd scenario" where "a 65-year-old employee who is replaced by a 40-year-old employee is precluded from offering such replacement evidence to raise an inference of age discrimination" merely because both are members of the protected class. *Id.*

[4] Plaintiff additionally argues that the third element of the prima facie case is satisfied because Defendant effectively replaced Plaintiff with a substantially younger employee by retaining another employee. Plaintiff's argument here, however, is without merit. The record reflects that Defendant kept a Southeast Implementation Specialist, Ms. Duncan, who was in her 30's and had been hired approximately six months before Plaintiff's termination. [ECF No. 40-5, at 2; Velandingham Dep. at 118–19]. Still, a plaintiff "cannot demonstrate an inference of age discrimination from the mere fact that younger workers with less seniority were retained." *Miller v. Terramite Corp.*, 114 F. App'x 536, 542 (4th Cir. 2004). Moreover, it cannot reasonably be argued that Ms. Duncan replaced Plaintiff, as Mr. Velandingham's post-termination documentation indicates that his expectation was for Northeast Implementation Specialists to absorb Plaintiff's workload. [ECF No. 38-4].

[5] Plaintiff also generally argues that there is an inference of discrimination because Plaintiff is ten to twenty years

Defendant argues that its discharge of Ms. Nisa, a 26-year-old employee, negates any inference of discrimination at the prima facie case stage. [ECF No. 39, at 8–9]. Defendant, however, has not cited any law to support the assertion that an inference of discrimination can be *entirely negated* when an employer shows that it treated a substantially younger employee the same for similar conduct. Such a fact could weaken an inference of age discrimination, if Ms. Nisa was in fact similarly situated.[6] Still, this type of occurrence does not prevent a plaintiff from stating a prima facie case where she has otherwise carried her burden.

As the prima facie case burden is "de minimis," Plaintiff has satisfied her burden by showing she was discharged instead of a similarly situated, substantially younger counterpart after both were identified as having performance issues. Accordingly, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination.

## B.    Defendant Has Provided a Legitimate, Nondiscriminatory Reason

Once a plaintiff has stated a prima facie case, "the burden of production shifts to the defendant to offer a 'legitimate, nondiscriminatory reason for the challenged employment action.'" *Thompson*, 582 F. Supp. 3d at 363 (quoting *Barefoot*, 193 W. Va. at 483, 457 S.E.2d at 160). Where a defendant satisfies this burden, "the presumption of discrimination 'drops out of the picture,' and the burden of persuasion remains with the plaintiff to establish that the defendant

---

older than most of the other Implementation Specialists. [ECF No. 40, at 10]. This fact alone does not satisfy the third element of the prima facie test. "Merely being over the age of 40 is insufficient to create an inference of age discrimination." *Linger-Long v. Milvet*, No. 23-757, 2025 WL 2614062, at *3 (W. Va. Sept. 10, 2025) (citing *Johnson v. Killmer*, 219 W. Va. 320, 325, 633 S.E.2d 265, 270 (2006)). Additionally, the retention of younger employees, without more, is not determinative. *Miller*, 114 F. App'x at 542.

[6] I decline to specifically decide whether Ms. Nisa is an appropriate comparison employee in this case because it is not material or consequential to the case's outcome. Even if she were similar enough, it would not entirely dispose of the inference of discrimination generated by Defendant's treatment of Plaintiff relative to Ms. Grothouse. Defendant has not cited any law for the proposition that a defendant's similar treatment of a substantially younger employee creates an inference of nondiscrimination or entirely dispels an inference of discrimination. *See Balderson v. Lincare Inc.*, Civ. No. 2:19-cv-00666, 2020 WL 6051266, at *6 (S.D. W. Va. Oct. 13, 2020) (Johnston, J.) (explaining that even when there are competing inferences, "this only serves to undermine Plaintiff's claim, not refute it completely").

intentionally discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)) (citing *Burdine*, 450 U.S. at 253). I find that Defendant has carried its burden here by articulating a legitimate, nondiscriminatory reason for discharging Plaintiff.

The court's purpose is not to "second guess the wisdom of business decisions[,]" *EEOC v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992), or "sit as a kind of super-personnel department weighing the prudence of employment decisions," *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997)). A defendant's nondiscriminatory reason "need not be a particularly good one." *Conaway*, 178 W. Va. at 171, 358 S.E.2d at 430. In fact, "a defendant is not required to show that its reason for laying off employees was a wise or prudent one." *Alderman v. Fola Coal Co., LLC*, Nos. 2:10-cv-00907–00910, 00912–00915, 2011 WL 5358717, at *9 (S.D. W. Va. Nov. 7, 2011) (Goodwin, J.) (citing *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 513 (4th Cir. 1994)). The crux is that the proffered reason "can be any other reason except that the plaintiff was a member of a protected class." *Conaway*, 178 W. Va. at 171, 358 S.E.2d at 430.

Here, Defendant articulated a legitimate, nondiscriminatory reason for its decision to discharge Plaintiff and for its selection of Plaintiff instead of other employees. Mr. Velandingham, who was responsible for implementing the reduction in force, explained his reasoning for the discharge determination. He analyzed the entire organization's business needs before determining that the Northeast region's Implementation Team was overstaffed due to lower-than-expected growth in that region. From there, he considered whether employees had the "skill sets necessary and strategically aligned to the business." [Velandingham Dep. at 59]. Specifically, Mr.

12

Velandingham spoke to Ms. Burns, relied on his own knowledge of employees' work product, and looked at final performance ratings. *Id.* at 80–83, 87, 110.

One reason Mr. Velandingham chose to eliminate Plaintiff's position was because he considered Plaintiff "more of a generalist" while others on the team were subject matter experts in certain systems.[7] *Id.* at 65, 68. Mr. Velandingham testified that it is important for Defendant to have subject matter experts in its systems because Defendant has "over a hundred different unique systems in place. . . ." *Id.* at 65. Consequently, he took into account that Plaintiff's work product did not reflect that she was a subject-matter expert. *Id.* at 95–97. Mr. Velandingham also considered Ms. Burns's report that she did not have confidence in Plaintiff's ability to handle complex cases and that Plaintiff required more guidance and assistance to handle her projects. *Id.* at 67, 80–81; [ECF No. 38-4]. Notably, "[j]ob performance and *relative* employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans v. Tech. App. & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (emphasis added).

Additionally, Mr. Velandingham explained why he chose to retain Ms. Duncan and Ms. Grothouse rather than Plaintiff. Though Ms. Duncan was an Implementation Specialist who had been hired about six months prior to Plaintiff's termination, Ms. Duncan was in another region where there were not concerns with overstaffing. [Velandingham Dep. at 118–19]. Mr.

---

[7] Mr. Velandingham testified that there were five Implementation Specialists in the Northeast region in addition to Plaintiff at the time of his decision: Abby Schlick, Sarah Stuart, Brittany Grothouse, Meena Ande, and Keshia Oree. [Velandingham Dep. at 76].

    With regard to Abby Schlick, Mr. Velandingham testified, "Abby is a subject matter expert in multiple EHRs. But specifically at this time, the decision was more based on the fact that she was able to be a portfolio of implementation projects for our market and manage them successfully, indicating she was influencing other implementation specialists and communicating with market leaders." *Id.* at 94.

    As to Sarah Stuart, Mr. Velandingham testified, "Sarah was a strong performer and was managing increasingly complex projects . . . . She was able to be assigned unknown electronic health records and practice types, and the management team was confident in her ability to be assigned a variety of implementation projects." *Id.* at 77.

    Mr. Velandingham testified that Meena Ande was their "prominent electronic—our E-Clinical Works, EHR system expert." *Id.* at 95. Regarding Keshia Oree, Mr. Velandingham testified that she "is a subject matter expert in Epic Systems, the largest electronic health record in the country." *Id.* at 94.

Velandingham did not think it prudent to terminate Ms. Duncan in order to open a position to retain Plaintiff in another region, especially because Ms. Duncan was a subject-matter expert who he considered more aligned with Defendant's business needs. *Id.* at 119, 131–32.

Mr. Velandingham further acknowledged that Ms. Burns had also mentioned concerns about Ms. Grothouse. Ms. Burns reported that Ms. Grothouse was "distracted and [ ] dealing with some personal challenges that seemed to be taking her away from focus on her job at times." *Id.* at 81. However, Mr. Velandingham chose to retain Ms. Grothouse because she "has deep experience in very qualified health centers, which are a very important segment for [Defendant]. She is also a subject matter expert in Greenway Intergy, which is a very prevalent electronic health record in large practices and community health centers." *Id.* at 82. Moreover, he testified that Ms. Grothouse "was providing overarching guidance in developing our point of view as to how to best optimize Greenway Intergy practices." *Id.*

To summarize, Defendant has articulated a legitimate, nondiscriminatory reason for (1) implementing its reduction in force, (2) selecting Plaintiff for discharge, and (3) eliminating Plaintiff's position rather than those of substantially younger employees. Because Defendant has carried its burden of production, the inference of discrimination "drops out," and the burden shifts to Plaintiff to rebut Defendant's stated justification.

## C.    Plaintiff Has Not Rebutted Defendant's Legitimate, Nondiscriminatory Reason

"[O]nce the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision[,] [the plaintiff] must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Reeves*, 530 U.S. at 143 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 507–08). Alternatively, under the WVHRA, a plaintiff can attempt to

proceed under a mixed motive theory. *Mayflower Vehicle Sys., Inc. v. Cheeks*, 218 W. Va. 703, 714, 629 S.E.2d 762, 773 (2006). This "applies where the employer articulates a legitimate nondiscriminatory reason for its decision which is not pretextual, but where the complainant demonstrates that a discriminatory motive nonetheless played a significant part in the employer's adverse decision against the complainant." *Id.* However, "where a plaintiff has failed to point to any evidence outside their 'own unsubstantiated opinion and conclusory speculation,' the Supreme Court of Appeals of West Virginia has granted summary judgment for the defendant." *Thompson*, 582 F. Supp. 3d at 369 (quoting *Gibson v. Little Gen. Stores, Inc.*, 221 W. Va. 360, 363–64, 655 S.E.2d 106, 109–10 (2007)). I find that Plaintiff has not carried her burden as to pretext or mixed motive in this case.

      1.      Plaintiff Has Failed to Demonstrate Pretext

"A proffered reason is a pretext if it was not 'the true reason for the decision.'" *Mayflower*, 218 W. Va. at 714, 629 S.E.2d at 773 (quoting *Conaway*, 178 W. Va. at 171, 358 S.E.2d at 430). A plaintiff may attempt to demonstrate pretext "by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. This may be accomplished with evidence that the employer's reasons "are inconsistent over time, false, or based on mistakes of fact." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (citing *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001)).

While a plaintiff can prove pretext through circumstantial evidence, she cannot establish a genuine issue of material fact based on mere speculation. *Thompson*, 582 F. Supp. 3d at 369. Additionally, "self-serving assertions without factual support in the record will not defeat a motion for summary judgment." *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 61 n.14, 459 S.E.2d 329, 338 n.14 (1995). For an employee's rebuttal, it is not enough to assert that the employer is lying.

*See id.* Instead, the "nonmoving party [must] produce specific facts that cast doubt on a moving party's claims or raise significant issues of credibility." *Thompson*, 582 F. Supp. 3d at 369 (quoting *Williams*, 194 W. Va. at 61 n.14, 459 S.E.3d at 338 n.14).

Plaintiff attempts to establish pretext by arguing that in the absence of "any true analysis of Ms. Ansell, the only factor [Defendant] could have relied on was Ms. Ansell's age." [ECF No. 40, at 12]. Yet, Plaintiff largely disputes Defendant's process for reduction instead of providing evidence that Defendant's stated reason for terminating Plaintiff was false or otherwise a disguise for discrimination. Given the evidence, Plaintiff's assertions amount to nothing more than unsupported speculation and conjecture.

The thrust of Plaintiff's argument is that Defendant's nondiscriminatory reason is not credible because Defendant did not scrutinize Plaintiff's performance closely enough prior to terminating her. Contrary to Plaintiff's contention, the record demonstrates that both Mr. Velandingham and Ms. Burns possessed sufficient personal knowledge to inform their conversation and decisions. Additionally, the evidence is consistent with Defendant's legitimate, nondiscriminatory reason.

Mr. Velandingham's knowledge stemmed from feedback and his own observations and experience. He received feedback in the ordinary course of business from Plaintiff's first supervisor, Ms. Flynn, about Plaintiff's slower onboarding experience. [Velandingham Dep. at 131]. Mr. Velandingham also testified that he had personally seen the work of the Implementation Specialists,[8] and between his knowledge and his conversation with Ms. Burns, he concluded that Plaintiff was more of a "generalist" than a "subject-matter expert." *Id.* at 67–68, 83, 87. Therefore,

---

[8] "**Q.** And how did you come by the knowledge of the output that these individuals were producing? **A.** I see their output on a regular basis. And I'm often tapping into specific employees to engage the practices as subject matter experts, and in escalations to given markets . . . ." [Velandingham Dep. at 86–87].

it is insufficient for Plaintiff to argue that Mr. Velandingham should have contacted Ms. Flynn and conducted more of an investigation. Mr. Velandingham made a business decision, and Plaintiff's contention does not provide evidence that the reasoning behind the decision was false or that it was applied inconsistently.

Mr. Velandingham also explained why he only referenced employees' final performance ratings rather than the specific, narrative sections of each review. He stated that the final ratings helped him determine whether there were any outliers in terms of performance, but the specifics contained within did not further aid him in gauging which employees were most aligned to business needs in a reduction in force setting.[9] *Id.* at 109, 110–12. Mr. Velandingham additionally testified that Plaintiff's performance did not demonstrate a particular knowledge indicative of her being a subject-matter expert.[10] *Id.* at 95–96. And notably, out of a list of other Implementation Specialists, Mr. Velandingham had not received feedback suggesting that the others could not handle complex cases. *Id.* at 130–31. Plaintiff cannot prove pretext by pointing out what she

---

[9] Plaintiff's argument hinges on blended assertions: (1) Mr. Velandingham did not have knowledge, (2) and he did not contact Ms. Flynn, (3) so he should have assessed the specifics of the performance reviews. Nonetheless, the evidence supports that Mr. Velandingham was operating with sufficient knowledge such that Plaintiff's argument does not cast a significant credibility concern on Defendant's reason.

"**Q.** So do you not think it would be important to look at the review of who Ms. Ansell's supervisor was for over 90 percent of her tenure at Aledade? . . . . **A.** I do not because I was aware of her performance. And despite Tracy Burns only being her direct report for a month, Tracy Burns had influence over these employees, led their onboarding and was engaged in their work since their hire date including the hiring process. So I was confident that she could represent as a proxy to Angie Flynn, who was on sabbatical, the current state of each employee in terms of the nuance I was after in decision making which mostly centered around their strategic alignment to what the business needed most going forward." [Velandingham Dep. at 112–13].

[10] "**Q.** Is there any kind of documentation or recordation of when an individual is determined to be a subject matter expert? **A.** No. It's largely demonstrated by their work product, which would include the ability to put together point-of-view documentation that served the broader team. . . . **Q.** So it's the past experience of these employees that make them a subject matter expert? . . . . **A.** And their ability to leverage that system expertise to develop solutions or best practice workflows that align to our business initiatives." [Velandingham Dep. at 97–98].

"**Q.** Did you ever look into whether she did have any [certifications]? **A.** I did not, as her performance was not demonstrating that she was proving out with that knowledge, and certification translated to her ability to be a subject matter expert." **Q.** What was it specifically about her performance that made you come to that conclusion? **A.** The lack of competence in being able to assign her projects that were complex or unknown, as well as her need for additional guidance in managing the projects she had and reliance on additional subject matter experts, including for Athena Health, E-Clinical Works, EHRs that she was being onboarded to learn." [Velandingham Dep. at 95–96].

perceives as flaws in Defendant's process, unless those purported shortcomings reveal that Defendant's reason is false—Plaintiff has not shown evidence of that here.

Regarding Ms. Burns, she had helped Plaintiff with work tasks since before becoming her supervisor and was therefore familiar with Plaintiff's abilities. Specifically, while Ms. Flynn was still Plaintiff's supervisor, Ms. Flynn designated Ms. Burns as the person responsible for assigning cases to the Implementation Specialists, which kept Ms. Burns actively engaged in Plaintiff's workflow. [Burns Dep. at 71–72; Velandingham Dep. at 112–13]. Ms. Burns testified that she was concerned about the cases Plaintiff could handle based on her observations, and she further testified that Plaintiff brought on subject matter experts for help "far more" frequently than others. [Burns Dep. at 39–40, 71–72]. Plaintiff herself acknowledged that she considered Ms. Burns a mentor because Ms. Burns was her "go-to-person" when she had questions. [Ansell Dep. at 70, 101]. Therefore, while Ms. Burns indicated some lack of confidence in Plaintiff based on information from others, the record demonstrates that she also had sufficient personal knowledge to form her opinion.[11]

Consequently, Plaintiff cannot demonstrate that Ms. Burns's or Mr. Velandingham's stated reasons lack credibility due to insufficient knowledge of Plaintiff's performance or abilities. In any event, Plaintiff has not connected the circumstances she cites in such a way that demonstrates Defendant's nondiscriminatory reason is "unworthy of credence" and pretext for age discrimination. The court's role is not to "decide whether the [employer's] reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *DeJarnette*, 133 F.3d at 299 (quoting *Giannopoulos*, 109 F.3d at 410–11).

---

[11] "**Q.** [W]hat criteria were you using to determine which employees that you wanted to provide the names of to Rick? **A.** Based on personal experience with them . . . . Seeing what I assigned projects, who I can assign projects to. It's hard to assign projects if you just can't give an implementation specialist any project . . . ." [Burns Dep. at 49].

Plaintiff raises two additional rebuttal arguments. First, she contends Defendant's reason is pretextual because Defendant did not terminate a less senior employee in another region in order to transfer and retain Plaintiff. However, "a company is not required to terminate younger employees to retain older employees." *Henson v. Liggett Grp., Inc.*, 61 F.3d 270, 277 (4th Cir. 1995). Defendant also provided a legitimate, nondiscriminatory reason as to this argument. Without more, Plaintiff has not rebutted Defendant's stated rationale simply by pointing to the fact that a less senior and younger employee was retained.

Second, Plaintiff asserts that Defendant's reason is pretextual because Defendant retained Ms. Grothouse, despite her subsequently being placed on a performance improvement plan. [ECF No. 40, at 16]. While I found that Ms. Grothouse was similarly situated at the prima facie case stage, Plaintiff has not carried her burden of persuasion such that Ms. Grothouse remains an appropriate comparator to prove pretext. Establishing a prima facie case involves a relatively low threshold, whereas demonstrating pretext through comparator evidence requires showing that the employees were similarly situated and "'engaged in the same conduct *without such differentiating or mitigating circumstances* that would distinguish their conduct or the employer's treatment of them for it.'" *Cowgill v. First Data Tech., Inc.*, 41 F.4th 370, 381 (2022) (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (per curium) (emphasis added)); *Mayflower*, 218 W. Va. at 714, 629 S.E.2d at 715 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (cleaned up)).

Here, Mr. Velandingham sufficiently set forth his reasoning for retaining Ms. Grothouse instead of Plaintiff. While Ms. Grothouse had some performance issues, she could still be assigned complex cases, and she was a subject-matter expert in a critical area. Therefore, there were "such differentiating or mitigating circumstances that would distinguish . . . the employer's treatment of

them" for their conduct. To the extent that Plaintiff argues Defendant should have analyzed performance reviews more closely, both Plaintiff and Ms. Grothouse received a "solid" rating, and Defendant outlined its reasons for further distinguishing between the two. [Velandingham Dep. at 67, 80–83, 111–12]. "When considering an employee's qualifications and job performance, it is the perception of the decision maker, not the unsupported opinion of the plaintiff, that is relevant." *Evans*, 80 F.3d at 960–61.

Plaintiff additionally focuses on the fact that Ms. Grothouse was subsequently put on a performance plan, which is typically a step taken before terminating an employee. [Burns Dep. at 63]. However, the performance plan was not initiated until after the reduction-in-force decision was made, and Plaintiff has not provided any evidence indicating Ms. Burns or Mr. Velandingham had reason to believe a performance plan would be necessary for Ms. Grothouse at the time Plaintiff was discharged. *Id.* at 63–64. That a business decision may have ended up being poor in hindsight does not transform a prior decision into intentional discrimination without more.

Defendant has explained how and why its decision was not based on age. Plaintiff has not rebutted that reason with more than speculation when her burden of persuasion is proof by a preponderance of the evidence. Defendant decided between two employees who both had room for improvement, and Plaintiff disputes the way Mr. Velandingham selected and implemented his criteria. However, this was a business decision that, without more, Plaintiff has not demonstrated was pretextual.

### 2. Plaintiff Has Failed to Demonstrate Mixed Motive

A mixed-motive theory does not require a plaintiff to prove that the employer's legitimate, nondiscriminatory reason was false. *Mayflower*, 218 W. Va. at 714, 629 S.E.2d at 773. Rather, a plaintiff carries her burden by demonstrating "that a discriminatory motive nonetheless played a

significant part in the employer's adverse decision against the complainant." *Id.* In such cases, "there is no one single 'true' motive behind the decision. Instead, the decision is a result of multiple factors, at least one of which is legitimate and at least one of which is illegitimate." *Id.* Yet, the illegitimate factor must still have been a "significant part" of the decision. *Id.*

Because Plaintiff has not demonstrated that age was a factor in Defendant's decision, I cannot find that age played a significant role in Defendant's determination. Notably, the record supports that age did not play a significant role given three facts: (1) Defendant also discharged a 26 year-old, (2) none of the three regions has hired another Implementation Specialist since Plaintiff's discharge, and (3) Defendant hired Plaintiff when she was 66 years-old, which severely erodes any argument that Defendant held age-based animus that would motivate its decisions in significant part.

Plaintiff has not asserted that any manager ever made age-related comments to her or about her. Regarding her colleagues, Plaintiff points to a single instance where a co-worker made a reference to her age on a call by stating "someone your age." [Ansell Dep. at 138]. Other than this, Plaintiff testified that it was merely her subjective feeling that the workplace had a young culture. This is not enough.

I recognize that discrimination involves an element of the mind, which can present evidentiary hurdles. Nevertheless, in the complete absence of specific facts indicating that age played a role or that Defendant's stated reason is false, I cannot find that Plaintiff has rebutted Defendant's reason by a preponderance of the evidence. Because Defendant has articulated a legitimate, nondiscriminatory reason that Plaintiff has failed to rebut under a pretext or mixed motive analysis, summary judgement is proper.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment [**ECF No. 38**] is **GRANTED.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        December 18, 2025

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE